The condition of the instrument recited that writs of fi. fa. had issued from Warren County court, at the instance of the plaintiffs, against the goods and chattels of one Powell; that these writs had been levied on a certain horse, as the property of Powell; that the horse was in the possession of one Harrison, and provided that "if the said Harrison should produce and deliver the said horse to the sheriff of Warren County, in the town of Warrenton, on or before 24 November, 1820, then the obligation to be void," etc.
The subscribing witness to the bond proved that, in the evening of 22 September, 1820, he was in Warrenton, in company with the sheriff, Hawkins; that Hawkins said he believed he should have to carry home with him the horse, but hoped Harrison would be able to give security for his forthcoming. Shortly afterwards the witness was called into a room in which he found the sheriff, Harrison, and the defendants; the bond was then executed by Harrison and the defendants, and attested by the witness.
(41) A witness on the part of the defendants proved that Harrison arrived with the horse at Warrenton on the evening of 23 November, 1820, and declared that the had brought the horse for the purpose of surrendering him to the sheriff. About sunset on the succeeding day Harrison caused the horse to be carried to the door of the courthouse in Warrenton, and there publicly declared his readiness to deliver the animal to the sheriff, and that he then and there tendered him pursuant to the condition of the bond; but neither the sheriff or any person on his behalf was there to receive the horse. The sheriff had advertised the sale of the horse to take place in Warrenton on 24 November, 1820, but had not been seen in town during the day, nor had any of his deputies. *Page 37 
Any evidence dehors the bond to show that it was taken by the sheriff, and not by the obligees therein named, was objected to by the plaintiffs, but the court received such evidence. It was then contended by plaintiffs that to exonerate the defendants it was incumbent on them to show a notice to the sheriff to be at Warrenton, on the 24th to receive the horse. The court instructed the jury that if such notice were necessary they were at liberty to presume that the sheriff had it, from the facts stated in the condition of the bond, and from the evidence; and further, that if the bond were taken by the sheriff without the agency and contract of the plaintiffs it was void; if taken by the plaintiffs, on their own agreement with the obligors, it was good, and if the facts were as stated by the witnesses, defendants; were entitled to a verdict. A verdict was rendered for the defendants; a new trial having been refused and judgment rendered, plaintiffs appealed.
An obligation to perform an act is complied with by a performance only. The omission to perform it may be excused by the act of God, the act of the law, or the act of the obligee. (42)
The defendants rest their excuse on the spirit of the third ground, that is, by making the omission of the sheriff the omission of the obligees, and if they succeed in this, they certainly will prevail; otherwise, not. This case was not argued, and we are left to our own researches.
Coke in his Commentary on Littleton, 208b, says, "If a man be bound to A. in an obligation, with condition to enfeoff B. (who is a mere stranger) before a day, and the obligor both offer to enfeoff B., who refuseth, the obligation is forfeit; for the obligor hath taken upon him to enfeoff him, and his refusal cannot satisfy the condition, because no feoffment is made, but if the feoffment had been made by the condition to the obligee, or to any other, for his benefit or behoof, a tender and refusal shall save the bond, because he himself, upon the matter, is the cause wherefore the condition of the bond could not be performed, and therefore shall not give himself cause of action." I am rather inclined to think that the case under consideration does not come within the latter branch of this rule; it is quite evident it does not within the first. To make the whole rule stand together I must consider the stranger in the latter branch as the agent or servant of the obligee, not barely one who was to do some ulterior act which might be for his benefit; or, that the act when done was beneficial to the obligee; for, in the case where the act was to be done to a mere stranger, the obligor might always get relief in equity by paying the damages which the *Page 38 
obligee has sustained by the breach, and if not interested in the act he could sustain none; at most, only nominal. Why, then, not excuse him, where the stranger refuses to receive the act? There can be no other rational ground than that the obligee is interested in having it done, and the obligor having undertaken to do it to a person over whom the obligee has no control, the obligor is not excused by the refusal or neglect of the stranger; but where the obligee is the person to (43) whom the act is to be done, or where it is to be done to his servant or his agent, a refusal, in such case, shall not give an action, because no man can give himself a cause of action by his own wrongful act, and the act of the servant or agent is the act of the principal. Nor does the case put immediately after the above quotation bear upon the present. The case is, if A. be bound to B. that C shall enfeoff D.; in this case, if C. tender and D. refuse, the obligation is saved, for the obligor himself undertakes to do no act, but that a stranger shall enfeoff a stranger; for in this case one of the obligors, Harrison, is to do the act; he is no stranger to his coobligors, and it is difficult to conceive a case where the principle is bound to do an act and the securities not, when the same obligatory words are used as applicable to both. The principle, I believe, is plain enough, and it is not disputed; it is to be found in all the books — the difficulty lies in its application. Maunly v. Drake, 10 John, 27, is very much like this. Indeed, in the view taken by the Court (although the facts do not entirely warrant it, for, according to them, there was neither a surrender or offer to do so, but only some talk about it), it is impossible to distinguish it from this; and there the opinion of the Court was that the defendants were not excused. I therefore think that the judgment should be reversed and a new trial granted.